UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60930-CIV-COHN/SELTZER

EDWIN HERNANDEZ,

    Plaintiff,

v.

MOTOROLA MOBILITY, INC.,

    Defendants.
                               /

## ORDER DENYING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendant Motorola Mobility, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint [DE 26] ("Motion"). The Court has considered the Motion, Plaintiff's Response [DE 32], Defendant's Reply [35], the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

While Plaintiff Dr. Edwin Hernandez was a doctoral candidate at the University of Florida ("University"), he invented a device that would reduce the time and expense that mobile and wireless companies spend on developing their products. Second Am. Compl. [DE 22] ¶ 12. In August 2002, he assigned his invention to the University, and in July 2003, the University filed a provisional patent application with the United States Patent and Trademark Office ("PTO"). Id. ¶¶ 13-14. In November 2003, Plaintiff began employment with Defendant Motorola Mobility, Inc. ("Defendant"). Id. ¶ 16. Plaintiff disclosed the pending patent application to Defendant in an attachment to his Employment Agreement. Id. ¶ 18. On August 2, 2004, the University filed a formal patent application with the PTO. Id. ¶ 15. In October 2006, Plaintiff provided

Defendant with a copy of the recently published patent application with respect to the invention.  Id. ¶ 24.  According to Plaintiff, Defendant began work on an identical device in January 2007.  Id. ¶ 26.  On June 12, 2007, the PTO issued a patent for Plaintiff's invention (U.S. Patent 7,231,330), and Plaintiff immediately informed Defendant of the issued patent.  Id. ¶¶ 28-29.  In April 2008, Plaintiff started a company called Rapid Mobile Technologies, Inc. ("Rapid Mobile"), for the purpose of obtaining a licensing agreement with the University for the invention.  Id. ¶ 30.

In late January 2010, Plaintiff informed Defendant's Director, Chin P. Wong, of the existence and contents of the patent.  Id. ¶ 35.  Wong then told Plaintiff that the company had "the same thing in the lab," and showed Plaintiff a device called the Drive Test Simulator ("DTS"), which performed the same function as Plaintiff's invention.  Id. ¶¶ 36-40.  According to Plaintiff, Wong admitted that Defendant had already used the DTS on fourteen products.  Id. ¶ 41.  In early February 2010, Plaintiff suggested that Defendant obtain a licensing agreement from the University so that the company could legally utilize Plaintiff's invention.  Id. ¶ 45.  Plaintiff further suggested that Defendant would only have to pay the University "a symbolic amount" to use the invention.  Id. ¶ 46.  Plaintiff also offered that Defendant could enter into a partnership with Rapid Mobile that would allow Defendant to use Rapid Mobile's licensing agreement.  Id. ¶ 47.  On April 30, 2010, Defendant advised Plaintiff that it was not interested in a licensing agreement.  Id. ¶ 50.  In June 2010, Plaintiff spoke to Defendant's management and requested that they either obtain a licensing agreement from the University, or cease using the DTS.  Id. ¶ 51.  On July 1, 2010, Plaintiff was placed on administrative leave, and two weeks later, he was dismissed from employment with Defendant.  Id. ¶¶ 52-53.

Plaintiff claims that he was fired for objecting to Defendant's alleged patent-infringing activities. Id. ¶¶ 56, 59.

On April 10, 2012, Plaintiff filed suit against Motorola Solutions, Inc., in Florida state court, alleging violations of the Florida Whistleblower Protection Act ("WPA"), Florida Statutes § 448.102. See Notice of Removal, Ex. A [DE 1-2] at 6. On May 7, 2012, Plaintiff amended his Complaint to add a WPA claim against Defendant Motorola Mobility, Inc. See id. at 14-23. Motorola Solutions, Inc., was later dismissed from this suit. See Order Dismissing Def. Motorola Solutions, Inc. [DE 44]. The action was removed to this Court, and Defendant subsequently filed a Motion to Dismiss Plaintiff's Amended Complaint [DE 16] ("First Motion to Dismiss"). On June 25, 2012, Plaintiff filed a Second Amended Complaint, alleging that Defendant's use of the DTS infringed on the University's patent. See Second Am. Compl. ¶¶ 42-44. In light of the Second Amended Complaint, the Court denied as moot Defendant's First Motion to Dismiss. See DE 24. In the instant Motion, Defendant seeks to dismiss the Second Amended Complaint, arguing that Plaintiff has not established a *prima facie* claim for relief under the WPA. Plaintiff opposes the Motion.

## II. MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

3

need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

Defendant argues that Plaintiff has not established a *prima facie* case under the WPA. The WPA provides that, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stats. § 448.102(3). The statute defines 'law, rule, or regulation' as including "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4). In analyzing WPA claims, courts apply the same standard used for retaliatory discharge claims brought under

4

Title VII of the Civil Rights Act of 1964.  See Allocco v. City of Coral Gables, 221 F. Supp. 2d 1317, 1367 (S.D. Fla. 2002) (citing Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000)).  To prevail on a retaliation claim under Title VII, a party must demonstrate that "(1) he engaged in a statutorily-protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events." Alloco, 221 F. Supp. 2d at 1367; Padron v. Bellsouth Tele., Inc., 196 F. Supp. 2d 1250, 1255 (S.D. Fla. 2002) (applying the Title VII retaliation standards to a WPA claim).  A party may establish that he was engaged in a statutorily-protected activity by showing that he opposed an unlawful practice of his employer's that he reasonably believes had occurred.  See Padron, 165 F. Supp. 2d at 1255.  Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse employment action.  Allocco, 221 F. Supp. 2d at 1367-68.

Here, Plaintiff alleges that he objected to Defendant's violation of federal patent law, and that as a result, he was discharged from employment.  See Second Am. Compl. ¶¶ 56-59.  Defendant does not dispute Plaintiff's version of events at this time.  Rather, Defendant argues that Plaintiff's claim is deficient because the alleged infringement does not constitute a "violation of the law" under the WPA.  Defendant asserts that Florida courts have interpreted the WPA to apply only when the underlying illegal conduct jeopardizes the public's well-being.  In support of this contention, Defendant cites to Arrow Air v. Walsh, 645 So. 2d 422 (Fla. 1994), where the court stated, in dicta, that the purpose of the WPA is "to protect private employees who report or refuse to assist employers who violate *laws enacted to protect the public*."  645 So.

2d at 424 (emphasis added). Therefore, Defendant argues, because patent infringement is more akin to a private tort which causes private harms, Plaintiff's whistleblowing is not protected under the WPA.

This argument is without merit for two reasons. First, Defendant's proposed construction of the WPA goes against the plain language of the statute. In determining the legislature's intent regarding a statutory provision, the court first looks to the text of the statute. See McLaughlin v. State, 721 So. 2d 1170 1172 (Fla. 1998). If the statute is unambiguous, then it "must be given its plain and obvious meaning." Id. (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984)). The WPA, by its express terms, covers disclosures of an employer's violations of "any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4). By contrast, Florida's public-sector whistleblower law, enacted four years prior to the WPA, provides that

> (5) The information disclosed under this section must include
>
> (a) Any violation or suspected violation of any federal, state, or local law, rule or regulation . . . **which creates and presents a substantial and specific danger to the public's health, safety, or welfare**.
>
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Fla. Stat. § 112.3187(5) (emphasis added). The private-sector WPA does not contain this type of limiting language. Therefore, the Court concludes that the private-sector WPA does not require that the complained of violation of law implicate a public

6

interest.[1]

Second, Defendant's assertion that Florida courts have narrowed the meaning of the WPA is incorrect, and Defendant's reliance on Arrow Air is misplaced.  The only issue before the court in Arrow Air was whether the WPA applied retroactively.  645 So. 2d at 422.  The court found that the WPA was similar to the public-sector whistleblower statute — in that it protects employees who refuse to participate in employers' violations of the law — except that it created a new cause of action in Florida.  Id. at 424-25.  Thus, the court held that the WPA applied only prospectively.  Id. at 425.  At no point, however, did the court differentiate between "laws enacted to protect the public," and laws protecting private interests.

Several courts have repeated the Arrow Air dicta concerning the purpose of the WPA.  But each in each case, they have mentioned it only in passing, and have never used it to cabin the otherwise inclusive language of the WPA.  See, e.g., Jenkins v. Golf Channel, 714 So. 2d 558, 563 (Fla. 5th DCA 1998); Bush v. Raytheon, 373 F.App'x 936, 940 (11th Cir. 2010); Allocco, 221 F. Supp. 2d at 1367; Vanacore v. UNC Ardco, 697 So. 2d 892, 893 (Fla.4th DCA 1997).  Moreover, the courts have permitted WPA claims to go forward where the underlying violations of law did not endanger the public as a whole.

---

[1] The only requirement in this regard is that the statute be "applicable to the employer and pertaining to the business."  Fla. Stat. § 448.101(4); see also Little v. Foster Wheeler Constructors, Inc., Case No. 09-61003-CIV-SELTZER, 2010 U.S. Dist. LEXIS 51082, at *20-30 (S.D. Fla. May 24, 2010) (discussing what "pertaining to the business" means for purposes of the WPA); Pinder v. Bahamasair Holdings Ltd., Inc., 661 F. Supp. 2d 1348, 1353 (S.D. Fla. 2009) (same).  However, because Defendant, as a mobile phone company, does not dispute that federal patent laws pertain to its business, the Court need not address this issue.

See Jenkins, 714 So. 2d at 560 (underlying violations included defendant's plagiarism, in violation of federal copyright law); see also Stubblefield v. Follet Higher Educ. Group, Inc., Case No. 8:10-cv-824-T-24-AEP, 2010 U.S. Dist. LEXIS 50393, at *7 (M.D. Fla. May 20, 2010) (finding that a breach of contract would be sufficient basis for a WPA claim, if the breach of contract also violated a statutory law). Indeed, Defendant has not cited any WPA cases in which the court distinguished between laws meant to protect the public, and laws enacted for other purposes.

Moreover, the WPA is a remedial statute, and should be broadly construed. Dahl v. Eckerd Family Youth Alternatives, Inc., 843 So. 2d 956, 958 (Fla. 2d DCA 2003); see also Jenkins, 752 So. 2d at 566 ("[R]emedial statutes should be liberally construed in favor of granting access to the remedy"). It would be inappropriate to narrow the clear terms of a remedial state statute where the legislature and state courts have declined to do so. Therefore, the Court finds that the WPA applies to an employer's violations of any statute or ordinance applicable to the employer and pertaining to the business, including, in this case, federal patent laws. Thus, because Plaintiff alleges that he was fired after objecting to Defendant's statutory violations, the Court finds that he has adequately stated a claim for relief under the WPA, and Defendant's Motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant Motorola Mobility, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint [DE 26] is **DENIED**. Defendant shall file

its Answer to the Second Amended Complaint by no later than **January 25, 2013**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 14th day of January, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF