UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60930-CIV-COHN/SELTZER

EDWIN HERNANDEZ,

    Plaintiff,

v.

MOTOROLA MOBILITY, INC.,

    Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION
AND GRANTING IN PART DEFENDANT'S MOTION FOR COSTS**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Reconsideration [DE 122], Defendant's Motion for Bill of Costs [DE 124], and Plaintiff's Motion to Strike Defendant's Reply Brief in Support of Its Bill of Costs [DE 132]. The Court has carefully reviewed these motions, along with the filings supporting and opposing the motions, and is otherwise fully advised in the premises.

**I.**    **Background**[1]

In this case, Plaintiff Edwin Hernandez alleges that his former employer, Defendant Motorola Mobility, Inc., (a/k/a Motorola Mobility LLC) discharged him because he objected to Defendant's violations of federal patent-infringement laws. Plaintiff asserts a retaliation claim under Florida's private-sector whistleblower act ("FWA"). See Fla. Stat. § 448.102(3). In a Sealed Order of May 6, 2013, the Court granted Defendant's Sealed Motion for Summary Judgment [DE 70] and denied

---

[1] The Court's prior Order granting summary judgment to Defendant sets forth the facts and history of this case in detail. See DE 120 at 2-11. This Order summarizes the facts and procedural events directly relevant to the pending motions.

Plaintiff's Sealed Motion for Partial Summary Judgment [DE 80]. See DE 120.[2] Applying the burden-shifting standards for retaliation claims, the Court found it doubtful that Plaintiff could "show a causal link between his protected activity and Motorola's decision to terminate his employment." DE 120 at 17. The Court explained that Plaintiff had presented no evidence to rebut the testimony of Peter Aloumanis—Defendant's Vice President who made the decision to discharge Plaintiff—that he was unaware of Plaintiff's patent-infringement complaints when he decided to terminate Plaintiff's employment. See id. at 17-18. Further, the Court determined that even if a triable issue of fact existed regarding causation, Defendant had "offered a legitimate, non-retaliatory reason for Hernandez's discharge: that he violated Motorola's conflict-of-interest policies by operating Rapid Mobile—a company that targeted as clients Motorola's competitors and customers—without disclosing those activities to Motorola or obtaining its approval." Id. at 19. And though Plaintiff had argued that this reason was a pretext for illegal retaliation, the Court found that Plaintiff's pretext arguments were refuted by the record. See id. at 19-20. Accordingly, the Court granted summary judgment to Defendant. See id. at 20; DE 121 (Final Judgment).

Plaintiff now moves for reconsideration of the Court's summary-judgment Order. See DE 122; Fed. R. Civ. P. 59(e). In addition, Defendant seeks an award of litigation costs as the prevailing party. See DE 124. Both motions are fully briefed and ripe for decision.

---

[2] Because the parties' summary-judgment motions and most of the supporting documents were filed under seal, the Court filed its previous Order under seal in an abundance of caution. The parties, however, did not file their post-judgment motions under seal. Therefore, this Order is likewise filed publicly.

**II.     Discussion**

   **A.     Plaintiff's Motion for Reconsideration**

Three grounds justify reconsideration of an earlier order: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Williams v. Cruise Ships Catering & Serv. Int'l, N.V., 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004); Reyher v. Equitable Life Assurance Soc'y, 900 F. Supp. 428, 430 (M.D. Fla. 1995). A motion for reconsideration is not intended to be a tool for relitigating what a court has already decided. See Reyher, 900 F. Supp. at 430. Rather, the motion "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. (internal quotations omitted); see Williams, 320 F. Supp. 2d at 1358. Reconsideration of a previous order is "an extraordinary remedy, to be employed sparingly." Williams, 320 F. Supp. 2d at 1358 (internal quotations omitted).

Here, Plaintiff seeks reconsideration based solely on "clear error and manifest injustice." DE 122 at 1. Plaintiff's argument relates to a meeting that Aloumanis held with three individuals before he decided to discharge Plaintiff: a human-resources consultant who helped investigate Plaintiff's conflicts of interest involving outside companies; Defendant's in-house patent counsel; and another lawyer who was in charge of Defendant's Office of Ethics and Compliance ("OEC"), which investigated Plaintiff's conflicts of interest. See DE 120 at 9-11. During that meeting, Aloumanis was informed of the conclusions in OEC's investigative report, including that Plaintiff had failed to disclose his involvement with Rapid Mobile. See id. at 10-11. Based on Plaintiff's violations of Defendant's conflict-of-interest policies, Aloumanis decided to

3

terminate Plaintiff's employment.  See id. at 11.  Aloumanis testified that he used the advice of Defendant's lawyers in making the decision to discharge Plaintiff.  See DE 88-1 at 16.  But when Plaintiff's counsel asked Aloumanis to disclose the substance of that advice, defense counsel objected based on attorney-client privilege and instructed Aloumanis not to answer.  See id. at 6, 9, 16.

Plaintiff now claims that because Defendant invoked attorney-client privilege regarding the advice of counsel, Plaintiff was unfairly prevented from obtaining evidence that Aloumanis discharged Plaintiff in retaliation for his patent-related complaints.  Plaintiff argues that Aloumanis selectively disclosed certain privileged communications with counsel while "conceal[ing] the rest of the conversation."  DE 122 at 3-4.  The Court finds that this argument does not demonstrate error—much less clear error or manifest injustice—in the Court's summary-judgment ruling.

While Aloumanis testified that he learned of Plaintiff's ethics violations during the meeting with counsel, see DE 88-1 at 10-12, Aloumanis revealed no confidential communications with Defendant's attorneys.  See Upjohn Co. v. United States, 449 U.S. 383, 395 (1981) (emphasizing that the attorney-client privilege "only protects disclosure of **communications**; it does not protect disclosure of the **underlying facts** by those who communicated with the attorney" (emphases added)); In re Fed. Grand Jury Proceedings 89-10 (MIA), 938 F.2d 1578, 1582 (11th Cir. 1991) ("The attorney-client privilege protects communications rather than information." (internal quotation marks & alterations omitted)); see also Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc., 111 F.R.D. 76, 83 (S.D.N.Y. 1986) ("A party's knowledge of facts, from whatever source, is not privileged.").  The Court thus rejects Plaintiff's argument that Defendant selectively disclosed privileged communications.  See United States v.

4

O'Malley, 786 F.2d 786, 794 (7th Cir. 1986) ("[A] client does not waive his attorney-client privilege merely by disclosing a subject which he had discussed with his attorney." (internal quotation marks omitted)); Champion Int'l Corp. v. Int'l Paper Co., 486 F. Supp. 1328, 1333 (N.D. Ga. 1980) (holding that party had not waived attorney-client privilege through partial disclosure because "[n]o significant part of any communication privileged due to attorney-client confidence has been disclosed").

Nor was Plaintiff unfairly deprived of the chance to obtain evidence concerning Defendant's motive for discharging Plaintiff. Plaintiff's counsel was free to ask Aloumanis about his reasons for terminating Plaintiff's employment and about what facts he knew at that time. But Plaintiff was not entitled to learn the substance of any legal advice that Defendant's attorneys provided to Aloumanis. Plaintiff does not dispute that such advice is generally protected by the attorney-client privilege. And Aloumanis did not waive that privilege merely by testifying that he was informed of Plaintiff's ethics violations during the meeting with counsel.

In sum, Plaintiff has shown no valid reason for the Court to reconsider its grant of summary judgment to Defendant. As the Court previously concluded, Plaintiff has failed to offer evidence rebutting Aloumanis's testimony that he was unaware of Plaintiff's patent-infringement complaints when he decided to discharge Plaintiff.[3] Defendant's proper invocation of attorney-client privilege does not warrant a different conclusion. The Court will therefore deny Plaintiff's Motion for Reconsideration.

---

[3] Plaintiff once again argues that Defendant's retaliatory motive can be inferred from its patent attorney's presence at the meeting with Aloumanis. The Court has already rejected this argument, see DE 120 at 17, and Plaintiff gives no valid reason to reconsider that ruling.

Case 0:12-cv-60930-JIC   Document 133   Entered on FLSD Docket 09/04/2013   Page 6 of 14

### B.   Defendant's Motion for Costs

The Court now turns to Defendant's Motion for Bill of Costs, in which Defendant requests litigation costs totaling $55,430.46.[4]  These costs include fees of the Clerk, costs associated with depositions, expert-witness fees, and photocopying charges.  See DE 124 at 1.  The Bill of Costs indicates that Defendant is seeking taxable costs pursuant to 28 U.S.C. § 1920.  See id. at 1-2.  In its Reply, though, Defendant argues that it is also entitled to recover costs under the FWA.  See DE 131; Fla. Stat. § 448.104.  The Court will address Defendant's recovery of costs under each statute.[5]

#### 1.   Costs Under FWA

The FWA provides that "[a] court may award reasonable attorney's fees, court costs, and expenses to the prevailing party."  Fla. Stat. § 448.104.  As the statutory language suggests, awarding fees or costs under section 448.104 "is not mandatory" but is within the court's discretion.  New World Commc'ns of Tampa, Inc. v. Akre, 866 So. 2d 1231, 1235 (Fla. 2d DCA 2004) (order granting rehearing and clarification).  The exercise of this discretion is guided by several factors:

(1)   the scope and history of the litigation, including whether the Plaintiff continued to prosecute the action despite the presence of an efficient resolution to the case;

(2)   the parties' wealth disparity;

---

[4]  In its original Bill of Costs, Defendant sought costs totaling $58,955.46.  See DE 124 at 1.  But in its Reply, Defendant reduced its request for expert-witness fees by $3,525.00.  See DE 131 at 9.

[5]  Plaintiff moves to strike Defendant's Reply because Defendant did not request costs under the FWA in its original Motion for Bill of Costs.  See DE 132.  The Court notes, however, that Plaintiff's Response also included arguments concerning recovery of costs under the FWA.  See DE 128 at 2-3.  In any event, because the Court declines to award costs under the FWA for other reasons, Plaintiff's motion to strike will be denied as moot.

6

  (3)  whether an award of fees would frustrate the FWA's remedial purpose by deterring worthy claimants;

  (4)  whether the opposing party's case was meritorious or frivolous; and

  (5)  whether the opposing party acted in good or bad faith.

<u>Blanco v. TransAtlantic Bank</u>, No. 07-20303-CIV, 2009 WL 2762361, at *2 (S.D. Fla. Aug. 31, 2009) (footnotes omitted).

  Because the Court granted summary judgment to Defendant, there is no question that Defendant is the prevailing party. But even assuming that the costs sought by Defendant are otherwise recoverable under section 448.104, the Court declines to award costs under that statute. This litigation was fairly extensive and involved detailed issues regarding the technical aspects of Plaintiff's patent and Defendant's system that allegedly infringed that patent. The Court ultimately did not reach those issues because Plaintiff "failed to present sufficient evidence on other key elements of his claim." DE 120 at 6. Yet the Court cannot say that Plaintiff's claim could have been easily resolved, that it was frivolous, or that it was brought in bad faith. Indeed, the Court denied Defendant's motion to dismiss Plaintiff's Second Amended Complaint, finding that Plaintiff had adequately stated an FWA retaliation claim. <u>See</u> DE 49. The Court did conclude later that Plaintiff had not produced substantial evidence that his discharge was motivated by illegal retaliation. But that conclusion required a careful examination of the factual record and the parties' arguments. For these reasons, the Court finds that awarding costs under the FWA is not appropriate in this case.[6]

---

[6] Also, while the Court places less weight on these factors, there is little doubt that Defendant has greater wealth than Plaintiff, and it is possible that an award of costs here would frustrate the FWA's remedial purpose by deterring worthy claimants.

### 2. Costs Under 28 U.S.C. § 1920

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." A prevailing party's recoverable costs are listed in 28 U.S.C. § 1920. Section 1920 allows taxation of the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and costs of making copies necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and of interpreters, and salaries, fees, expenses, and costs of special interpretation services. See 28 U.S.C. § 1920. Since Defendant is the prevailing party, it is entitled to recover taxable costs as permitted by § 1920.

Plaintiff argues that most of the costs Defendant seeks to recover are not taxable under § 1920. A presumption exists in favor of awarding costs. See Manor Healthcare Corp. v. Lomello, 929 F.2d 633, 639 (11th Cir. 1991). "When challenging whether costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed cost is a matter within the exclusive knowledge of the prevailing party." Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc., 385 F. Supp. 2d 1272, 1288 (M.D. Fla. 2005). Thus, the Court will specifically address only the costs that Plaintiff has challenged. See Ferguson v. N. Broward Hosp. Dist., No. 10-61606, 2011 WL 3583754, at *1-*3 (S.D. Fla. Aug. 15, 2011).

#### a. Deposition Costs

Plaintiff first disputes certain costs associated with five depositions in this case. See DE 124-3. Section 1920(2) permits taxation of "[f]ees for printed or electronically

8

recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Therefore, the cost of a deposition transcript is taxable so long as the deposition was "necessarily obtained for use in the case." EEOC v. W&O, Inc., 213 F.3d 600, 620-21 (11th Cir. 2000). A deposition is considered necessary if it was "related to an issue which was present in the case at the time the deposition was taken." Id. at 621 (internal quotation marks omitted).

 Plaintiff does not dispute that the five depositions for which Defendant seeks costs were necessarily obtained for use in this case. Plaintiff disclosed all of the deponents as witnesses, and Defendant used all five deposition transcripts in support of its motion for summary judgment. Thus, the costs associated with the depositions are generally taxable. See EEOC v. W&O, Inc., 213 F.3d 600, 621 (11th Cir. 2000) ("A district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions." (internal quotation marks omitted)). Nevertheless, Plaintiff contests Defendant's recovery of "transcription and deposition costs for rough drafts (expedited or rush copies of the transcript), CD Depo Litigation Package, Shipping and Handling, and additional attendance fees, totaling $1,946.55." DE 128 at 3. Plaintiff also maintains that the transcript costs "should be reduced to $4.02 per page"—the maximum standard rate allowed for transcripts prepared by court reporters in this District—resulting in "a further reduction of $2,724.32." Id. at 4.

 "Any portion of the cost of a deposition that was incurred for the convenience of the attorney rather than being necessarily obtained for use in the case is not properly taxable." Patrick v. Bishop State Cmty. Coll., No. 10–0188–WS–M, 2011 WL 2784585, at *1 (S.D. Ala. July 15, 2011). Defendant asserts that the fees for expedited transcripts were necessary because (1) Plaintiff did not notify Defendant of the

9

depositions until a month before the discovery deadline; (2) the depositions were taken just before discovery closed; and (3) Defendant needed to obtain the transcripts quickly in order to meet the dispositive-motions deadline two weeks later. Based on this explanation, which the record appears to confirm, the Court finds that the expedited-transcript charges were necessary rather than merely convenient. These costs, totaling $832.00, are therefore taxable under 28 U.S.C. § 1920(2).

Defendant, however, may not recover the $439.55 in charges for "CD Depo Litigation Package" and "Shipping and Handling." "The costs of such additional services, when incurred solely for the convenience of counsel, are not reimbursable." Spatz v. Microtel Inns & Suites Franchising, Inc., No. 11-60509-CIV, 2012 WL 1587663, at *6 (S.D. Fla. May 4, 2012); see McCalla v. Avmed, Inc., No. 11-60007-CIV, 2011 WL 5190946, at *3 (S.D. Fla. Nov. 1, 2011). And Defendant has not explained why the optional charges for digital copies and shipping were necessary. Accordingly, the Court will exclude these charges from Defendant's costs award.

The Court will permit recovery of the $675.00 in "additional attendance fees" challenged by Plaintiff. These charges reflect the stenographer's attendance at two depositions beyond the first hour. Such attendance fees are taxable, and the charges imposed here are reasonable. See Spatz, 2012 WL 1587663, at *4; McCalla, 2011 WL 5190946, at *3.

The Court also rejects Plaintiff's request to reduce the transcript costs to $4.02 per page. As noted above, that amount is the maximum standard rate allowed for transcripts prepared by court reporters. At least one Court in this District has used this rate to limit recovery of deposition-transcript costs. See Perfect Web Techs., Inc. v. InfoUSA, Inc., No. 07-80286-CIV, 2009 WL 2407689, at *10 (S.D. Fla. Aug. 4, 2009).

10

This Court concludes, however, that the transcript rate applicable to court reporters is not binding in evaluating the reasonableness of a private stenographer's deposition-transcript fees. And, especially given the expedited preparation of certain transcripts here, the Court finds that the requested per-page charges are reasonable.

### b. Fees for *Pro Hac Vice* Motions

Plaintiff further objects to Defendant's recovery of $375.00 in fees paid to the Clerk of Court for five *pro hac vice* applications filed by Defendant's out-of-state attorneys. See DE 124-2 at 35-68; 28 U.S.C. § 1920(1) (providing that "[f]ees of the clerk" are taxable costs). The Court finds this objection well-taken. As other courts have recognized, "the *pro hac vice* fee is an expense of counsel, not the client, and is thus not properly recoverable under 28 U.S.C. § 1920 as fees of the clerk." Exhibit Icons, LLC v. XP Cos., LLC, No. 07-80824-CIV, 2009 WL 3877667, at *1 (S.D. Fla. Nov. 18, 2009) (collecting cases); see also Covington v. Ariz. Beverage Co., No. 08-21894-CIV, 2011 WL 810592, at *3-*4 (S.D. Fla. Jan. 25, 2011) (following Exhibit Icons and holding that "*pro hac vice* fees are not recoverable under Section 1920"). More, even though "competent in-state attorneys were available," Defendant chose to retain five out-of-state lawyers to help defend it in this case. Exhibit Icons, 2009 WL 3877667, at *1. It would be unfair for Plaintiff to "bear a cost resulting from" that choice. Id. Thus, Defendant may not recover the fees for counsel's *pro hac vice* applications.

### c. Expert Witness Fees

Plaintiff next argues that Defendant may not recover $45,000.00 in fees that it paid to expert witness Harry Bims. See DE 124-5; DE 131 at 9. According to Defendant, engaging Bims "was essential . . . to demonstrate that [Plaintiff] could not prove his *prima facie* case under the FWA." DE 131 at 9. Defendant concedes,

11

however, that these expert-witness fees are not taxable under any provision of § 1920. See Manriquez v. Manuel Diaz Farms, Inc., No. 00-1511-CIV, 2002 WL 1050331, at *4 (S.D. Fla. May 23, 2002) (explaining that § 1920 does not permit recovery for fees of experts not appointed by the court). Instead, Defendant seeks recovery of these costs under the FWA. Because the Court has already declined to award costs under that statute, Defendant may not recover its expert-witness fees.

### d. Financial Waiver or Stay of Costs Award

Plaintiff contends that the Court should decline to award costs to Defendant because, "as a result of his termination from Motorola, [Plaintiff] has been unable to obtain regular employment and awarding costs to [Defendant] would result in an enormous financial hardship to him." DE 128 at 2. The Eleventh Circuit has held that "a non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)." Chapman v. AI Transp., 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc). For the court to consider the non-prevailing party's financial situation in assessing costs, that party must present "substantial documentation of a true inability to pay." Id. In other words, there must be "clear proof of the non-prevailing party's dire financial circumstances before that factor can be considered." Id. Further, the court may not take into account "the relative wealth of the parties." Id. And even in the "rare circumstances" where the non-prevailing party's financial condition is considered, "a court may not decline to award any costs at all." Id.

Here, Plaintiff has offered no evidence to support of his claim of "enormous financial hardship." The existing record, moreover, casts doubt upon this claim. As detailed in the Court's summary-judgment Order, Plaintiff is an engineer, inventor, and

entrepreneur. Indeed, the record shows that Defendant discharged Plaintiff due to his undisclosed involvement with a competing company. The Court therefore declines to reduce the taxable costs based on Plaintiff's financial situation.[7]

Last, Plaintiff asks the Court to defer any award of costs until after the Eleventh Circuit decides Plaintiff's pending appeal of the summary-judgment Order. But other than noting the possibility of reversal on appeal, Plaintiff gives no valid reason for delaying the Court's ruling on taxable costs. And Defendant, having prevailed before this Court, is entitled to recover taxable costs at this time, despite Plaintiff's appeal. See Fed. R. Civ. P. 54(d)(1); Rothenberg v. Sec. Mgmt. Co., 677 F.2d 64, 64 (11th Cir. 1982) ("It is well settled in this circuit that costs may be taxed after a notice of appeal has been filed."). Accordingly, the Court denies Plaintiff's request to stay the decision on taxable costs.[8]

### III.   Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   Plaintiff's Motion for Reconsideration [DE 122] is **DENIED**;

2.   Defendant's Motion for Bill of Costs [DE 124] is **GRANTED IN PART and DENIED IN PART**;

3.   Plaintiff's Motion to Strike Defendant's Reply Brief in Support of Its Bill of Costs [DE 132] is **DENIED AS MOOT**; and

---

[7] Plaintiff also asserts that the Court should deny Defendant's costs motion because defense counsel failed to adequately confer with Plaintiff's counsel before filing the motion. See S.D. Fla. L.R. 7.3. Having considered Defendant's response to this argument, the Court finds that defense counsel satisfied the conferral requirement.

[8] This ruling does not prevent Defendant, if it so chooses, from deferring execution of the judgment taxing costs.

4.	Defendant is awarded costs totaling $9,615.91.  The Court will enter a separate final judgment taxing costs.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 4th day of September, 2013.

_____
JAMES I. COHN
United States District Judge

Copies to:

Counsel of record via CM/ECF